May it please the Court, I am Rod Petula for SOGECABLE. How did you say it? I say it SOGECABLE, but I do not know Spanish, and I may be mispronouncing it. I don't either. I think there's some threshold issues in this case, in this appeal, that cut across virtually all the other issues and have an impact on them. And those issues really have to do with whether or not allegations in a complaint will be treated as binding admissions or binding on a party, and under what circumstances, and secondly, whether amendments can be made to overcome admissions that occur in prior pleadings. Of course, we know the basic rules and policies here, that the law prefers cases to be decided on proofs rather than pleadings. There's liberality of amendment and the like, but at the same time, we also have the principle that you can't plead your way out of an admission, you can't change the facts of your case, if you will, in such a way as to simply alter your story, change your story. From reading the cases that have been cited to the Court that bear on this issue, I think there are three elements that are probably necessary to bind a party at the pleading stage and to make ineffective a subsequent amendment to the pleading. I think those three characteristics are these. One, the admission must be clear, unequivocal, and unambiguous. Secondly, the pleader must have personal knowledge of the fact alleged. And three, there must be no reasonable explanation for the error or the reason to correct the allegation. All three elements need to be present. None of those three elements is present in this case on any of the allegations that were material to the district court's order of dismissal. The statute of limitations issues first. Of course, we have three-year federal statute of limitations that are implicated, and we have two-year statute of limitations implicated on the state law claims. We submit that the district court erred in construing the First Amendment complaint as it did and then in rejecting the effectiveness of the amendments made by plaintiffs to that First Amendment complaint. The pivotal paragraph in the First Amendment complaint, of course, is paragraph 45. It has three sentences. I'm going to address each of the sentences separately. The first sentence is that in late 1999, counterfeit MediaGuard smart cards began emerging on markets worldwide. What's missing from that sentence that's pertinent to the statute of limitations? Well, first, when did the cards come to Spain? There's no allegation in the First Amendment complaint anywhere, and not in that sentence, as to when the counterfeit cards got to the Spanish market. Secondly, when did the cards in the Spanish market cause harm to plaintiffs, and specifically cards for which the defendants are allegedly responsible? That's not in paragraph 45, and that's nowhere in the First Amendment complaint. And then third, when was the – when were the plaintiffs injured by defendant's conduct? That's not in the first sentence of paragraph 45, and it's not anywhere else. How do you distinguish when did they harm and when were they injured? Well, that's the same for us. You said there were two separate questions. One was when were they harmed, and the second was when were they injured. When were they – what I meant by that is, Your Honor, when were they harmed as a result of defendant's misconduct, as distinguished from other counterfeiting that goes on all the time? And that's what, of course, the complaint would have to allege. So when – the ultimate question here is when did counterfeit cards for which the defendants are responsible come into the Spanish market and become used to pirate the plaintiff's satellite transmissions? That's the ultimate question. That's what's missing from paragraph 45 and from the First Amendment complaint in its entirety. The second sentence that the district court relied upon in paragraph 45 is that these cards were produced only after the publication of the user ROM in Canada on the DR-7 website, and that the cards – these cards contained a perfect replica of the complex encryption code that had been published at DR-7. What's missing from this sentence? The big thing that is missing is when was that fact learned? In the original complaint, there are many facts alleged. When was what fact learned? When was that fact learned? Which one? That there was a perfect replica of the encryption on the cards. The district court inferred that it – that it inferred, and I emphasize inferred, that it was known from the beginning, that it was known from 1999. In fact, that's not what paragraph 45 says. That's not what the second sentence in paragraph 45 says. And you won't find an answer to that question, a clear, unequivocal, and unambiguous answer anywhere in the First Amendment complaint. In the Second Amendment complaint, we made it very clear that we didn't know that fact until March of 2002, and the plaintiff so alleges affirmatively in the Second Amendment complaint. Now, if you – you knew before that, though, that there were counterfeit – that Canal Plus had somehow not protected itself from certain counterfeit cards and that those cards were harming you. Is that correct? No. We – the cards – the first cards that were discovered were discovered in the U.K., the so-called British card. I understand. That was July – that was in 99. That was in 99. Right. Later in 99, there were – excuse me, in 2000, there were cards detected in the Spanish market, although the early cards were crude copies, the kind of piracy that you normally see. I've actually seen these cards. They have a bump on them, and you can see that they're – it's a crude kind of technology that's being used. The first time, according to the Second Amendment complaint, the first time that we find cards in the market that harmed Xochicable and contained the entire encryption code, in other words, seemed to be a result of the posting. But does it make it that they have the entire code or not if they're – were harming it? Well, because if it's not the entire code, then it's not this defendant. What this defendant is charged with doing – I guess I'm sort of working around you. As I read the discovery rule, you don't have to know who did it. You just have to know what did it. And the same is really true of equitable tolling. I don't see anything that says you have to know who, you have to know what. You have to know what has actually occurred. You have to know causation. And in some instances, causation will involve not only who. For example, in the typical case of – But it may not involve who. It may not. In certain cases – for example, in the pharmacology cases, those cases very many times involve situations where, for example, the patient thinks he may have been harmed by the physician, and then he finds out later that it wasn't the physician's malpractice, but rather the chemical that he was given, the drug that he was given. Right. So he must understand the causation. He must understand the what. Right. Now, in – No, wait, no, wait. Supposing in July of 99, you understood the whole what. Just hypothetically. That there was some counterfeiting of the cards going on? No, the whole what you're talking about. There were perfect replicas of cards in, say, 2000, when it came into the Spanish market. So let's assume that in 2000, you knew all the what you were ever going to know, okay? That there was a perfect replica out there. So someone – Precisely. In other words, someone had compromised the media guard technology. Precisely. I'm with you now. If you knew that at that point, the statute would start running, correct? No, it would not for another reason that's unique to this case. And that is this. Not only must you have actual or constructive discovery of the injury and the causation, but you must also be able to file a claim. And in this instance, one of the – you have to know who did it. Probably Jolly under state law. Well, if I read state law correctly, state law says very clearly you don't have to know who. Well – In fact, the case you gave us, Fox, I think you gave us. Right. Fox says that. Yes. You don't have to know who. You just have to know what. Exactly. You have to know the causation. However, you also have to be able to – you have to know all the essential facts that allow you to bring a claim. And one of the big missing facts in the first admitted complaint, and as alleged affirmatively in the second admitted complaint, is that the plaintiffs had no way of knowing and had no way of knowing about the U.S. nexus of the scheme, which was critical to the existence of a claim. Before March of 2002, all Sochicabue knew was that its cards had been pirated and the underlying technology had been compromised. I think Judge Fernandez is correct in that regard. But could the statute begin to run when Sochicabue did not know any facts which would allow it to assert a claim? It is undisputed on this record that Spanish law afforded no claim for relief at this time. U.K. law, Canadian law, the law of many countries did not afford a claim for relief. U.S. law did. When did Sochicabue allegedly learn that it had a claim? It learned it when it learned the facts about the California connection, if you will, or the California nexus, the activities of Tarnovsky in Los Angeles and the activities of NDS America as the subsidiary. Isn't federal law somewhat different than California law on the question of whether you have to know who the proper defendant is? That's correct, Your Honor. And so as to the federal claims, the analysis might be a little easier for your side. If you say yes, which case are you relying on? On the federal claims for who? Kubrick, probably.  The United States Supreme Court. Kubrick? Kubrick. Oh, Cedric Kubrick. I mean, Cedric Kushner versus no. Kushner doesn't say you have to know who. No, no. I have it confused in terms of which case now, Your Honor. I'm sorry. That's all right. We'll figure it out. May I submit that as a supplemental authority to the Court? No, it's okay. Go find it. All right. The key to that, however, of course, is that the plaintiff could not, it had nowhere to go with its lawsuit. Not knowing enough detail to fashion a claim under U.S. law was crucial. Moreover, moreover, we have additional grounds for tolling. We have the ground of judicial estoppel in particular, which I think is crucial here, because if it is taken as given that we were allowed to amend and to clarify this paragraph 145. I read that part of your argument carefully, but I have difficulty seeing the judicial estoppel piece of it. I didn't see any place where there was a specific reference made to the statute of limitations or any willingness to waive reliance on the statute of limitations. Nothing nearly that exact. And the same kind of rule that you're asking be applied to the admissions in the First Amendment complaint, if you have that sort of vision when you look at the judicial estoppel question, what are you relying on? Let me say, first of all, the estoppel we're requesting is not that they can't rely on the statute of limitations. What we're saying is that they cannot avoid the tolling effect of the complaint and intervention which had been filed with the Northern District of California in December of 2002. Okay. Where is their statement that they will not argue statute of limitations grounds or lateness grounds as distinct from substantive grounds? Well, two things that I'm trying to get across. I think one is that they said that in no way, in no way in any way will these proposed or putative intervenors be prejudiced if this action is dismissed. That's all inclusive. The most important is not that they are saying we won't claim statute of limitations defenses which accrued before December of 2002. What they were saying is we want this case dismissed instead of continued with intervention. And if that is allowed, they will not be prejudiced. But, in fact, we have been prejudiced. How have we been prejudiced? Well, if the case had continued, the complaint and intervention would have been deemed filed and the statute of limitations would have ceased to run in December of 2002 instead of running now for eight months longer. That eight months is crucial to the analysis, especially when you recognize that the only allegation of injury in the Second Amendment complaint, the earliest date, is January of 2001, meaning that even the State law claims are timely and cannot be dismissed under 12b-6. We're not suggesting that this defendant, and there's nothing in the law that I can see, would have to say, well, all right, are we going to be prejudiced this way? Are we going to be prejudiced by statute of limitations? Are we going to be prejudiced by latches? Are we going to be prejudiced from res judicata? They did argue res judicata below as well on the basis of that dismissal. What we submit, Your Honor, is they said this. These putative intervenors will not be prejudiced in any way if this case is dismissed instead of continued with the intervention allowed. Counsel, you're just about out of time. Enrico. We know you haven't waived it, but you are out of time. We'll give you a couple of minutes to rebuttal, though, because we've asked a few questions. But your time has expired. All right. So maybe I should wait until I do the rebuttal at the end? Yes. And we know Enrico's in there. As I said earlier, nothing that you don't get to is considered waived. You don't always get to everything in oral argument. May it please the Court, Darren Snyder for the defendants NDS Group and NDS Americas with me at counsel table is my co-counsel, Nathaniel Dilger. Your Honor, plaintiffs seek to resurrect their claims by arguing that their very detailed amended complaints do not provide necessary facts. But plaintiffs are mistaken. The facts necessary to prove that their claims are untimely are in their complaints, including the second amended complaint, and must be assumed true for purposes of this 12B6 motion and the appeal that comes from the district court granting that motion. The court need not answer any of the multifarious questions that plaintiffs' counsel poses. One need only look at the allegations of the second amended complaint to know that the claims accrued and that they were time barred. Critical to this analysis, and if there is any point I would like to leave with this court, it is the following. It is undisputed that Soja Cable had within its power to bring its claims in a timely manner. It is undisputed that by the motion of the district court. That brings us actually to the question with which opposing counsel ended, which was had the complaint in intervention been filed, that complaint would have been timely, at least with respect to many of the claims, if not all of them. What is your response to the argument that, essentially, your client induced the dismissal of those claims for its own advantage and then now seeks to take advantage of the dismissal of that and the refiling later on? Your Honor, to be blunt, I believe that the judicial estoppel argument can only be made based on a gross misreading of the transcript before Judge Walker. I attended that hearing. We have all reviewed the transcript. Well, let's start with one thing. Would the complaint, would the claims have been timely, or at least some of them been timely, had the complaint in intervention been filed in 2002? Under the district court's accrual analysis, the state court claims would not have been timely based on the intervention filing date in December of 2002. And the Federal claims would have been? But the Federal claims would have been timely under the district court's accrual analysis because the district court found that those three-year claims accrued no earlier or no later than the last day of 1999. And three years later would have been the last day of 2002. And those, if that complaint in intervention had gone forward, those Federal claims would have been timely. The state court claims, on the other hand, would not have been timely. Under your theory of accrual. Under the district court's theory of accrual and our theory of accrual, and under the allegations that Soja Coble had made. Let's go back to my initial question. So even you are willing to concede that under your theory of accrual, the Federal claims would have been timely had the complaint in intervention been filed and proceeded upon. That's correct. So what – I agree with you that the assurances that were made were quite general in nature. But in essence, what your client was seeking to do was to cause the dismissal of that complaint or intervention. We opposed the motions to intervene. Had the motions to intervene been granted, we would have been given an opportunity to challenge the sufficiency of those complaints. It was premature to do it at that point. All we were arguing at that – in that hearing was whether the motions to intervene should be granted. And the issue that Judge Walker posed is whether there would be a risk of inconsistent rulings. If he denied the motions to intervene and Soja Coble was compelled to bring a separate case. And so what the exchange between counsel and the court shows is exactly that issue. Mr. Lynch, my partner, said that nothing could happen in this case that would in any way prejudice the plaintiffs in the other cases after dismissal. And, of course, that is tautological. Because if the Canal Plus case were dismissed, then nothing would happen in that case. It would be gone. And thus the risk of an inconsistent ruling and the risk of something happening in the Canal Plus case would have disappeared. I'm concerned that you've proceeded to try to argue race judicata from that dismissal. Your Honor, there's a simple reason for that. Part of the reason that Soja Coble contended that its claims were timely was a reliance on Canal Plus pursuing its rights. And I believe it was perfectly appropriate for us to point out to the district court that if Soja Coble was relying on Canal Plus to pursue its rights and thus somehow suggesting that the accrual of its claims or the statute of limitations on its claims would be told, then it should also be bound by the result that Canal Plus orchestrated on its behalf. In the second amended complaint, Soja Coble expressly alleges that it relied on Canal Plus was bringing its claims on behalf of the operators using its system, including Soja Coble. We argued to the district court, although the district court did not address the issue, I still believe it is correct, that Soja Coble would have been bound by that decision because it had a unity of interest and was relying on Canal Plus to pursue its rights. But Canal Plus dismissed the thing for completely non-meritorious reasons. They had a settlement that they had to make. I mean, it didn't go to the merits at all. That is correct, Your Honor. Canal Plus and the defendants agreed to a dismissal with prejudice. If Canal Plus were pursuing its claims on behalf of all of the operators, as Soja Coble alleges in its second amended complaint, then if Soja Coble has an argument about the sufficiency of that dismissal or the settlement, its complaint is with Canal Plus, not with defendants. Having been dissatisfied with the resolution of its claims, when it gave to someone else the opportunity and obligation to pursue those claims, that does not resurrect its claims against NDS. It merely means that it has a complaint against Canal Plus. You know, it strikes me that many of the arguments that you've made in your brief at least, and we've been interrupting you so you haven't made them much here, but require the resolution of facts to determine whether when people knew things, whether their actions were reasonable in waiting for other things to happen, all the typical factual questions that arise when the discovery rule is in play. This is rather a general question, I know, but why on the pleadings, aren't these pleadings sufficient to raise factual issues that need to be determined later on, either through summary judgment or through trial or some other means, that these pleadings on their face at least raise questions about the discovery rule and about equitable tolling? Judge Graber, I agree that that is the question, but this circumstance is different from the one typically presented in the 12b-6 context because of the multiplicity of factual allegations that are made by Soja Cable. And let me try to be specific. We know that it was aware of counterfeit smart cards at least by July of 1999. In the second amended complaint, they alleged that they became aware of such a card in the United Kingdom and that they obtained, they actually obtained a copy of that card. The second amended complaint also alleges by late 1999, they were aware of cards that could access their system. And it was based on those allegations that the district court found that the federal causes of action had accrued no later than the end of 1999. What do you make of the statement in, Bebo is the name of our own case, I believe, B-I-B-E-A-U, in which I believe, again, I'm doing this from memory, so I apologize, but I believe it was an opinion by Judge Kaczynski in which he quotes from the Supreme Court and talks about how under federal law, the discovery rule, the question is not only whether the person knows that they were injured and knows the cause of the injury, but knows who injured them. Your Honor, the Bebo decision is not cited in any of the briefs, and I admit that I am not familiar with it. I am familiar with the Kubrick case, which the Court referred to earlier, which is a United States Supreme Court case. Right. It's cited in the brief. And that case is, in fact, distinguishable because in that case, all the Court found was that you did not have to know that there was a negligent cause to your injury. In that case, which is different from this one, the plaintiff knew of its injury. The plaintiff also knew of the identity of the actor. But was it injured at that time? Bebo's. What? Bebo's of what? No, I believe, I'm talking about the Kubrick case, Your Honor. I'm not familiar with the Bebo case. I'd be happy to submit. I guess my question is more about the statement of the general rule, whether you agree that that is the general rule or not, that one has to know the identity of the potential defendant. For the claim to begin accruing, I do not agree that the plaintiff needs to know the identity of the defendant. But does the discovery rule protect the plaintiff until they either knew or should with reasonable diligence have known the identity of a defendant whom they could sue? Whether it's in the form of the discovery rule or some form of equitable tolling, I do believe it is the law that a plaintiff should not be held to an unreasonable standard. And if they had no reason to know or should have known of the identity of the defendant, then some doctrine of law is likely to protect them. What distinguishes this case from the general statement of the law is that they unquestionably knew within the statute of limitations. Okay. So let me just make sure that we sort of do agree with the primers. If a plaintiff like this plaintiff did not know and with reasonable diligence could not have known of the identity of the malfeasor, the one that they want to sue, then you would agree that some doctrine would protect them until they either knew or with reasonable diligence could have found out whom to sue. Stated as broadly as that, Your Honor, yes. Okay. You are conceding that issue then? No. As broadly as it's stated, Your Honor, it's difficult. If you're conceding that you must know or with reasonable diligence be able to know who, then concede it. No. I am not conceding that, Your Honor. Then I don't understand your previous answer to my question. You just said you did. Let's be specific. Under State law, under Jolly, under Fox v. Endo Ethicon, you do not need to know who. For the claim to accrue. For the claim to accrue. Under State law, does equitable tolling protect you if you do not know the identity of anyone to sue and with reasonable diligence can't figure it out? I believe that would depend on the factual circumstances, Your Honor. In this circumstance. That sounds like a yes in theory, but if your facts support it. And so what I'm saying is it could. I'm not saying that it would in every circumstance. No, I know it doesn't in every circumstance. I do believe. I'm trying to get your best understanding of how California law treats this question and then how Federal law treats it. And what I'm struggling with first is at the theoretical level, before we begin to plug in these complaints and these facts, because if we don't know where we're starting theoretically, we don't know how to plug in these facts. And so what I'm trying to figure out is whether there is a doctrine under California law, and I had thought that it was equitable tolling of some sort, under California law that would protect a plaintiff from being held untimely if the plaintiff does not know the identity of the defendant and with reasonable diligence can't find out. And so if they don't know and can't know who is the person to sue, then a doctrine under California law will protect them until that, whenever it is under the facts, that moment arrives that they should have known or did know. Is that a fair understanding of California law? Stated in that way, Your Honor, yes. I would agree with it. Okay. So you're conceding that no or should know goes to who? That's fine. May I? I'm not trying to be argumentative, Your Honor. As an overall rule, you've got to be specific about it. Let me try. I believe that there are two issues. One is claim accrual. Another is a doctrine which goes under various names, but Your Honor just described as equitable tolling. Correct. I understand there are two doctrines. And I believe that claim accrual does not require knowledge of the identity of the defendant. I don't disagree with you. I'm trying to find out. My last set of questions was designed to agree with that and go directly to the question under California law of equitable tolling. I do agree that there is a doctrine of equitable tolling under federal and state law, and that it does have some content that it can, under certain circumstances, preserve a plaintiff's right to bring a claim against certain defendants. Okay. Now let's plug in this case. I'm not trying to be evasive, Your Honor, and I regret your frustration. It sounds evasive. Because what I'm trying to distinguish is between claim accrual and the doctrine of equitable tolling. I believe that distinction is critical in this case. Take equitable tolling. You're agreeing, I understand, that if you don't know the who and couldn't reasonably determine the who, then it's tolled until you do. Or should. That's correct. Okay. Now, the reason that that is not important in this case, Your Honor, is that there is no question that Soja Cable knew it could bring a claim against NDS within the statute of limitations. It is undisputed, it is alleged in their own complaint, that by March 12, 2002, their board of directors had been advised of the Canal Plus litigation. The reason the difference between accrual and equitable tolling is critical is the difference between when the cause of action starts, when the statute of limitations starts, and when it can be extended for equitable purposes. The statute of limitations started when Soja Cable was injured, which are different times depending on the different causes of action. It could be extended if they were not aware of their claim. But by March 12, 2002, under the allegations of the second amended complaint, they were unquestionably aware of that claim. And they could have brought their claim timely if they had chosen. But instead, they waited 17 months to bring this complaint, and it was there for a time. Wait a minute. If it's equitably tolled – oh, wait. You're over your time. I'll just make this quick. No, no. Please, please. That's okay. We're trying to get this out. If it is equitably tolled under Ninth Circuit law, it doesn't start running until March 12, 2002. Now, it ran because what? I believe it – and that was the distinction I was trying to draw, Your Honor. I know what you're trying to draw. The cause of action, the statute of limitations began when they were injured. It did not require that they knew the identity of the defendant at the time that the statute of limitations began. If there was no way for them to identify the defendant within the relevant statute of limitations, then the statute of limitations could be equitably extended. That does not mean that the statute of limitations begins at that point. Okay, so your view is that – okay, once they know on March 12, 2002, what is your view of how long they had after that to file a claim? They had until July of 2002 to bring a claim, the state law claims, because they were aware of counterfeit Spanish cards in July of 2000, and that is alleged in the second amended complaint. They had until December of 2002 to bring their federal claims, the DMCA and Communications Act claims, three years before the time that they were first aware of counterfeit cards that could access their signal, according to paragraph 3 of the second amended complaint. So your view is that the March 12, 2002 date is essentially irrelevant, even though you're agreeing that that's when they unquestionably know. I believe the identity of the defendants. I believe it is critically relevant, Your Honor, because it shows that within the statute of limitations they were able to bring a claim. Okay. But that's also the same time frame. Again, I'm doing this from memory, which is not always accurate, so correct me if I'm wrong. But isn't that almost exactly the same time that the Canal Plus litigation begins, March of 2002, and it's in connection with that that they learn this? So then your argument has to also incorporate that they were not reasonable in somehow in waiting for that litigation to unfold. I believe that the statute of limitations imposes on the plaintiff a duty of diligence and investigation. The statute of limitations does not begin on the day that you could file your complaint and give you that many years in which to run and file it. You also have a duty to investigate, and it gives you a period of time in which to do your investigation and to file your complaint. Within the statute of limitations, from the date that the claims accrued, Soja Cobley could have brought its claims. It knew everything it knew when it finally decided to bring those claims in July of 2003, and it knew that no later than the day after Canal Plus brought its lawsuit on March 11th. The second amended complaint alleges that there was a board of directors meeting at which Soja Cobley was advised of those allegations. So it relied on Canal Plus to do its investigation. Within the statute of limitations, it was advised of all the information it needed to bring that claim. It could have brought its claim within the statute of limitations, and it chose not to. So there is no reason to invoke the doctrine of equitable tolling because it knew all the information that it needed. Thank you, Counsel. You're well over your time, but we took a lot of it up. Thank you. And we appreciate your responses, and since we've allowed your opponent quite a bit of extra time, we'll give you another, say, three minutes for your rebuttal. Thank you, Your Honor. First of all, with regard to the res judicata issue, it's very simple. One of the elements of res judicata is that the first action has been dismissed. Of course, they could not have made a res judicata argument at all in this case if the Northern California action had not, in fact, been dismissed. So it's clear that they were taking advantage of that dismissal. In that regard, I want to point out something about the record. This is what the district court said right before the hearing when Judge Walker ordered the hearing. He said he was concerned, quote --" This is the Canal Plus litigation?   In San Francisco. Quote, That was the only concern that the district court expressed. What did counsel for NDS say at the hearing? He said, Now, we're not claiming that this is a bar to the statute of limitations defense. All we're claiming is that they can't claim any greater statute of limitations defense than they would have or any other defense for that matter. They can't claim any advantage from the dismissal, just like they can't claim res judicata. We're only asking for the tolling as of the date the complaint and intervention was tendered, because if it had been allowed, it would have tolled right there. That's the point we're trying to make on judicial estoppel and the limited point, but it's a crucial one to the statute of limitations. Secondly, there's no way that the statute, the claim can accrue. I have to say the word accrue, until Sochikovly was injured. Well, Sochikovly's injury doesn't occur until the smart cards are used to pirate its broadcast. There's no allegation of when that occurred in the first amendment complaint, because there was no statute of limitations issue that was perceived at that point. In the second amendment complaint, it's affirmatively alleged that that did not occur until sometime in 2000, and we don't even have an allegation of causation until January of 2001, when the mask card appears, because that's the first card where we know that the entire encryption code has been used. That's the first time that Sochikovly knows that the media guard technology has indeed been compromised. That's January of 2001. If you combine January of 2001 with accrual and ignore tolling for just a moment, when the judicial estoppel is invoked in December of 2002, you have less than two years of the statute running. With regard to equitable tolling, and we haven't even talked about fraudulent concealment, which is also alleged here, but on equitable tolling, we allege very specifically in the second amendment complaint, a history of diligence from 1999 all the way through March 2002, in an effort to seek out not only who, but exactly what happened, and to learn the facts that would permit us to file a lawsuit based on U.S. law, when no other law afforded any relief or remedy whatsoever. Again, a crucial and perhaps unique circumstance in this case. The equitable tolling doctrine. Under plaintiff's, excuse me, under defendant's argument made here today, if the board meeting at Sochi Copley had been held three years, or four years, or five years after the initial appearance of smart cards, then when would the statute of limitations expire? That's why courts have treated this as a tack-on concept, that the statute begins to run, and in that sense, the accrual and the tolling effect become merged in many, many cases, and this is one of them. Counsel, you have exceeded even our exceeded time, so. Thank you, Your Honor. Thank you. I think we understand the positions of both parties. We appreciate the arguments of counsel. The case just argued is submitted, and the final case on our calendar, Aguayo v. S&F Market Street Healthcare, has been submitted on the briefs as of today.
judges: B. Fletcher, Fernandez, Graber